IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLUMBIA GRAIN, INC., a Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>HINRICHS TRADING, LLC, dba HINRICHS TRADING COMPANY; HINRICHS AND COMPANY, a general partnership; and JOHN DOES I-V,<br><br>    Defendants. | Case No.  3:14-CV-115-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it (1) a motion in limine filed by defendant Hinrichs seeking to exclude certain testimony by Michael Fitz, an expert retained by plaintiff Columbia, and (2) a motion in limine filed by Columbia seeking to exclude various matters.  The motions are fully briefed and at issue.  For the reasons explained below, the Court will grant both motions.

## HINRICHS' MOTION IN LIMINE

<u>**Factual Background**</u>

This case arises from a fire in defendant Hinrichs' garbanzo bean crib elevator that spread to plaintiff Columbia's crib elevators.  Both elevators were destroyed.  Columbia filed this lawsuit against Hinrichs to recover its losses.  Hinrichs has filed a motion to exclude any testimony from Columbia's expert about testing he did that he described for

**Memorandum Decision & Order – page 1**

the first time in his rebuttal expert report.  Hinrichs claims the discussion of testing is untimely and should be excluded.

The expert at issue – Michael Fitz – was retained by Columbia to testify about the cause of the fire.  In his original report, Fitz concluded that an overheated bearing ignited combustible garbanzo bean dust.  *See Report (Docket No. 62-4)* at p. 6.  He also concluded that ""[s]moldering of organic material can occur for days and in some cases for weeks."  *Id.*  Although Fitz renders his opinions in separate paragraphs without any connecting narrative, the gist of his report is this:  On Friday May 10, 2013, an overheated bearing ignited garbanzo bean dust that proceeded to smolder for two days until it burst into flame following a wind storm on Sunday May 12, 2013.  He based this "smolder theory" on his "education, training, and experience," and did not rely upon any testing, reference works, or studies.

Hinrichs' responsive expert report was due on December 1, 2014.  In preparation, Hinrichs took Fitz's deposition on November 19, 2014.  Fitz was questioned about the source for his opinion on the smolder rate of garbanzo dust and he admitted he had none.  *See Hinrichs Brief (Dkt. No. 62-1)* at p. 10.

Hinrichs timely filed its responsive expert report – the CASE report – concluding that "it is not possible to identify an area of origin within the building with the accuracy required to identify a likely ignition source."  *See CASE Report (Dkt. No. 62-7)* at p. 12.  The CASE report highlighted Fitz's own admission that no testing or studies supported his smolder theory:  "There is no scientifically reliable evidence that a squeaking bearing

caused a fire in the grain elevator on Friday May 10, 2013, which smoldered until it was

detected on Sunday May 12, 2013." *Id.* at p. 12.

Columbia's rebuttal report was due December 30, 2014.  On that date, Columbia

filed Fitz's report that discussed new testing on dust ignition points and smolder rates that

he had conducted about two weeks earlier.  The testing is described on the first page of

the report as follows:

> Completed ASTM E2021 Hot Surface Ignition Temperature of Dust Layers
> using Garbanzo Bean dust. This testing demonstrated ignition temperatures
> of 520F for W'-3" layers of dust small than 60 mesh screen and 540F for
> coarser material.  Smoldering tests demonstrated W'-3" thick layers of 60-
> 200 mesh Garbanzo bean dust propagated at rates of 1.7-2.1 inches/hour.

*See Fitz Rebuttal Report (Dkt. No. 62-9)* at p. 1.  Fitz described these test results further

as follows:

> The source and form of heat was the failure of the bearing which caused
> overheating of the metallic components. Testing by MDE [Fitz's company]
> has shown that the temperature required for dust ignition is less than 600F.
> Basis: my testing, review of interviews and depositions, and my education,
> training and experience.
>
> Smoldering of organic material can occur for days and in some cases for
> weeks. Specific testing with Garbanzo Bean dust indicates a smoldering
> spread rate of approximately 1.7 - 2.1 inches/hour. The time between
> shutdown when the hot smell was detected and the time of the fire detection
> was less than 48 hours. This would be about 6.8 - 8.4 feet of burn. This time
> frame in conjunction with the increase of the wind on Sunday is consistent
> with a bearing failure causing this fire. Basis: my education, training and
> experience.

*Id.* at pp. 4-5.  In other words, Fitz's testing confirmed his earlier opinion that the dust

was ignited by the failed bearing and then smoldered for two days before bursting into

flame.  After Fitz filed this rebuttal report, a month remained for Hinrichs to take another

deposition of Fitz and question him about these new tests – the deadline for expert discovery was January 29, 2015.  For whatever reason, Hinrichs did not schedule that second deposition, and did not immediately demand Fitz's data and documentation associated with these new tests.  Hinrichs explains that it was waiting for Columbia to supplement its answers, as required by Rule 26(e), to an earlier request for all "notes documents and writings" used or produced by Columbia's experts.

When Columbia failed to produce Fitz's records on his new testing, Hinrichs' counsel wrote to Columbia's counsel requesting the material on April 2, 2015.  *See Letter (Dkt. No. 62-11).*  Columbia responded on April 22, 2015, by producing the documents and data.  This was about three months after the deadline passed for discovery of expert witnesses.

In the motion in limine now pending before the Court, Hinrichs seeks to exclude any evidence of this new testing described in Fitz's rebuttal report.  Columbia counters that it is proper rebuttal and proper supplementation under Rule 26(e).  The Court must determine whether Fitz's discussion of his smolder and ignition point testing was timely disclosed either as rebuttal to the CASE report or as supplementation to his original report.

## Analysis – Proper Rebuttal?

Columbia argues that Fitz's new testing properly rebutted Hinrichs' CASE Report opinion that there was no scientific evidence supporting Fitz's smolder theory.  Under Rule 26(a)(2)(D)(ii), rebuttal expert testimony is permitted after the parties' initial disclosures only where it "is intended solely to contradict or rebut evidence on the same

subject matter identified by another party."  Rebuttal expert testimony is limited to "new unforeseen facts brought out in the other side's case."  *Century Indem. Co. v. Marine Group, LLC,* 2015 WL 5521986 at *3 (D.Or. Sept. 26, 2015).  Rebuttal testimony cannot be used to advance new arguments or new evidence.  *Id.*

Here, the CASE report merely pointed out what Fitz himself had said in his original report – that there was no testing or studies to support his smolder theory.  Fitz could not refute his own words, and so his discussion of the new testing in his rebuttal report was an attempt to support his original report rather than refute the CASE report. Importantly, Fitz never explains why he did not conduct these tests earlier and describe them in his original report.  Using a rebuttal report to provide new evidence that could have been provided in the original report is precisely what is forbidden by the authorities quoted above.  The Court therefore finds that Fitz's description of his new testing to support his smolder theory is not proper rebuttal.

**Analysis – Proper Supplementation?**

If not allowed as rebuttal, may Fitz's description of his new testing nevertheless be allowed as supplementation to his original report under Rule 26?  Rule 26(e)(1) requires supplementation when a "party learns that in some material respect the information disclosed is incomplete or incorrect."  Under this Rule, supplementing an expert report means "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."  *Gerawan Farming, Inc. v. Rehig Pacific Co*., 2013 WL 1982797, at *5 (E.D.Cal. May 13, 2013). Supplementation "does not cover failures of omission because the expert did an

inadequate or incomplete preparation . . . .  To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation."  *Sherwin-Williams v. JB Collision Inc.,* 2015 WL 4742494 (S.D.Cal. Aug. 11, 2015) (quoting *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C.2002)).

Under these authorities, Fitz's attempt to support his original smolder theory with new tests, that could have been conducted earlier and discussed in his original report, cannot be allowed under the guise of supplementation.

**Remedy**

When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use those disclosures at trial unless it establishes that the failure was substantially justified or is harmless.  *See* Fed.R.Civ.P. 37(c)(1); *Goodman v. Staples,* 644 F.3d 817 (9th Cir. 2011).  The sanction is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001)).  Columbia has the burden of showing justification or harmlessness.  *Id.*

Columbia argues that Hinrichs is not harmed because once they received Fitz's rebuttal report, they had experts evaluate Fitz's smolder tests, and they filed a supplemental expert report of their own.  But if adopted, this argument would prevent any diligent party from enforcing court-imposed deadlines.  Forecasting court decisions is notoriously difficult, and a diligent party will typically take steps to protect itself in case

the court does not exclude the testimony.  If that diligence waives a claim of prejudice, deadlines will fade into obscurity.

Columbia argues that Hinrichs was actually less than diligent in one respect because they failed to take Fitz's deposition even though they had 30 days remaining on the expert discovery deadline after receiving Fitz's rebuttal report.  But Columbia cannot rely on this argument when it failed to provide Fitz's testing data and documents until three months later, despite a pending discovery request and a duty to supplement its discovery answers in a timely manner.

 For all of these reasons, Columbia has not carried its burden of showing justification or harmlessness.  The Court will therefore grant the motion to strike and exclude any evidence of Fitz's testing of his smolder theory described in his rebuttal expert report.

## COLUMBIA'S MOTION IN LIMINE

## Reports of Kenneth Janes and State Fire Marshal's Office

Columbia seeks to exclude any testimony from Hinrichs' experts about the opinions of two individuals who studied the fire's cause but who were not listed as expert witnesses.  These two individuals are an unnamed investigator from the Idaho State Fire Marshal's Office, and a private fire investigator, Kenneth Janes.  Both men arrived at the fire scene shortly after the fire, conducted an investigation, and concluded that they could

not determine the cause of the fire.  *See Idaho Fire Marshal's Investigation Report (Dkt. No. 70-1) & Janes Report (Dkt. No. 70-2).*[1]

Neither man was listed as an expert witness in Hinrichs' expert witness disclosures, and Hinrichs does not intend to call them to testify.  Rather, Hinrichs will call the experts it did identify in its disclosures – Scott Roberts and Dr. Tara Henriksen – to testify that (1) it is a standard investigatory technique in the fire investigation field to rely on the reports of other experts in forming an opinion about the cause of a fire, and (2) they specifically relied on the opinions contained in the reports of the Idaho State Fire Marshal's Office and Kenneth Janes that the cause of the fire could not be determined. Hinrichs intends to elicit testimony from both Roberts and Dr. Henriksen describing the facts gathered by, and opinions and findings rendered by, Kenneth Janes and the investigator for the Idaho State Fire Marshal's Office.

Rule 703 of the Federal Rules of Evidence states that a qualified expert may base his opinions on facts or data made known to him if it is of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject.  The facts and data relied on by the expert need not be admissible in order for the opinion or inference to be admitted.  A testifying expert may rely on the opinions of non-testifying experts as a foundation for the opinions within the testifying expert's field of expertise. *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 2013 WL 124347 at *1 (N.D.Cal. Jan. 8, 2013) (stating that "[a]n expert is permitted to rely on the opinion of another expert").

---

[1] There is an additional report by the Craigmont Fire Department.  But that report was not specifically identified until Columbia filed its reply brief.  Thus, the Court will not take it up here, but will resolve it in the course of ruling on issues raised by the trial briefs, where it is fully briefed.

Rule 703, however, is not a license for an expert witness to simply parrot the opinions of non-testifying experts. *Villagomes v. Lab. Corp. of Am*., 2010 WL 4628085, at *4 (D.Nev. Nov.8, 2010). Moreover, Rule 703 provides that even if the expert properly bases his opinions on facts or data that is not admissible, the inadmissible facts or data shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

With regard to the opinions of the non-testifying witness Kenneth Janes, the Court has held in an earlier decision that Hinrichs could not call Janes as a witness because Hinrichs failed to timely identify him as either a fact witness or as an expert witness. *See Memorandum Decision (Dkt. No. 46).* To now allow testifying experts Roberts and Dr. Henriksen to describe Janes' opinions would be to allow through the back door testimony that could not enter through the front door. There is "nothing in Rule 703 suggesting that an expert may rely on evidence the Court has expressly excluded." *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,* 2009 WL1292913 (S.D.Cal. May 6, 2009). For those reasons, the Court will grant the motion to exclude any testimony regarding the opinions of Kenneth Janes.

With regard to the opinions of the investigator with the Idaho Fire Marshal's Office, that individual is not identified in the report or in Hinrichs' briefing. Without knowing that person's identity, it is impossible to determine whether Roberts and Dr. Henriksen reasonably relied upon the opinions of that person. *See generally Fosmire v. Progressive Max Ins.Co.,* 277 F.R.D. 625, 630 (W.D.Wash. Oct. 11, 2011) (holding that

**Memorandum Decision & Order – page 9**

an expert may not rely on the opinion of another expert without independent verification of that expert's work).  Moreover, under Rule 703's balancing analysis, the probative value of an opinion by an unidentified person is so slight, and the prejudicial effect so great, that any opinions or findings in the Marshal's Report must be excluded.

This leaves the statements of fact contained in the Janes' Report and the Marshal's Report.  Columbia agrees that as long as the opinions in these Reports are excluded – as the Court has held above – the factual statements may be discussed by Roberts and Dr. Henriksen.  *See Columbia Brief (Dkt. No. 74)* at p. 4.  Thus, the Court will allow the testifying experts to discuss the account of the facts gathered in the Jane's and Marshal's Office Reports, but they may not testify as to any opinions, conclusions, or findings contained in those Reports.

## Scott Kiefer

Columbia seeks to exclude any evidence that Kiefer was convicted in 1994 for the unlawful use of a credit card.  At the time of the fire, Kiefer was employed by Columbia as a Yard Foreman.  He is expected to testify on behalf of Columbia that on Friday May 10, 2013 – two days before the fire – he heard sounds coming from the Hinrichs' facility that he associated with a failed bearing.  This is important support for Columbia's theory that an overheated failed bearing ignited bean dust that smoldered for two days before bursting into flame.

Hinrichs argues that the credit card conviction impeaches Kiefer's credibility and hence should not be excluded.  Under Rule 609(b), the use of a conviction more than 10 years old may be used for impeachment when its probative value substantially outweighs

its prejudicial effects.  Kiefer's credit card conviction is essentially a theft offense. Whatever "minimal" probative value the theft conviction has on honesty does not substantially outweigh the prejudicial effect of dredging up a conviction over 20 years old.  *See Heggem v. Snohomish Cnty.Corr.,* 2015 WL 1759201 at *3 (W.D.Wash. Apr. 17, 2015).  The Court will accordingly exclude any evidence of Kiefer's credit card conviction.

## Hostile Witnesses

Columbia will call the following witnesses in its case-in-chief and asks the Court to declare them hostile witnesses under Rule 611(c)(2):  (1) Brad Hobson; (2) Jeff Pontious; (3) Rodney Rupp; (4) Gary Henderson; (5) Phil Hinrichs; (6) Norm Trombetta; and (7) John Marshall.  During discovery, Hinrichs' counsel did not allow Columbia's counsel to contact these witnesses directly but controlled access to each of these witnesses and defended their depositions.  For these reasons, the Court finds that each of these witnesses will be deemed hostile for purposes of Rule 611(c)(2).

## Insurance, Settlement Discussions & Time Zone Differences

All agree on these matters, and so the Court will grant the motion as to these items.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Hinrichs' motion in limine (docket no. 62) is GRANTED and that the Court excludes from evidence at trial any

discussion of Fitz's testing regarding his smolder theory contained in his rebuttal expert report.

IT IS FURTHER ORDERED, that Columbia's motion in limine (docket no. 61) is GRANTED, and the Court shall (1) exclude any testimony or evidence of opinions, findings or conclusions contained in the Reports of the Idaho State Fire Marshal and Kenneth Janes; (2) exclude any evidence of insurance or settlement discussions; (3) exclude any evidence of the 1994 conviction for the unlawful use of a credit card by Scott Kiefer; (4) take judicial notice of the time change differences; and (5) deem as hostile for purposes of Rule 611(c)(2) the following witnesses:  (1) Brad Hobson; (2) Jeff Pontious; (3) Rodney Rupp; (4) Gary Henderson; (5) Phil Hinrichs; (6) Norm Trombetta; and (7) John Marshall.

DATED: October 30, 2015

B. Lynn Winmill
Chief Judge
United States District Court